**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Guy C. ASHER, Sr., Defendant–Appellant.**

**No. 95–1013.**

United States Court of Appeals, Seventh Circuit.

Argued May 9, 1995.

Decided June 28, 1995.

Mark D. Stuaan, Asst. U.S. Atty. and Steven D. DeBrota (argued), Office of the U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Gary P. Price (argued), Lewis & Kappes, Indianapolis, IN, for defendant-appellant.

Before ESCHBACH, FLAUM, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Defendant Guy C. Asher, Sr. ("Asher") pleaded guilty to bank fraud under 18 U.S.C. § 1344(a)(1) based on his involvement in a check-kiting scheme. The district court sentenced Asher to a term of imprisonment of twelve months and one day, to be followed by three years of supervised release. On appeal, Asher challenges his sentence. We affirm.

## I.

Guy C. Asher owned and operated Asher Truck & Trailer, Inc. ("Asher Truck"), a business engaged primarily in selling and maintaining trucks and trailers. Asher Truck had facilities in Evansville, Indiana and in Mt. Vernon, Illinois, and Asher maintained separate bank accounts for the two facilities. One account was with the National City Bank in Evansville, Indiana ("Evansville account"), and the other account was with the Bank of Illinois in Mt. Vernon, Illinois ("Mt. Vernon account").

In October 1989, Asher's business was experiencing cash flow problems, and the Mt. Vernon facility of Asher Truck found that its bank account had insufficient funds to cover a $40,000 payment owed to a supplier. Asher therefore wrote a check against the Evansville account and caused it to be deposited in the Mt. Vernon account. However, as Asher knew, the Evansville account also had insufficient funds to cover this amount. Asher then wrote an insufficient funds check against the Mt. Vernon account and deposited it into the Evansville account—and the check-kiting scheme was underway. Over the next six months, approximately 268 insufficient funds checks were written back and forth between the two accounts in the aggregate amount of approximately $6.7 million.

Asher's check-kiting scheme came to an end in April 1990, when the National City Bank in Evansville detected this fraudulent practice and ordered Asher to cease immediately. At the time the scheme was discover-

ed, the Evansville account was not overdrawn, but the Mt. Vernon account was overdrawn by $160,000. Asher promptly repaid this amount in full to the Bank of Illinois.

Asher was charged with bank fraud under 18 U.S.C. § 1344(a)(1), and he pleaded guilty to the charge. Under the sentencing guidelines, bank fraud gave Asher a base offense level of six, *see* U.S.S.G. § 2F1.1(a), and the sentencing court increased Asher's offense level by an additional seven points after determining that there was a loss of $160,000, *see* U.S.S.G. § 2F1.1(b)(1)(H). The sentencing court also added two points for more than minimal planning, *see* U.S.S.G. § 2F1.1(b)(2), and then subtracted two points for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(a). As a result of these calculations, Asher's total offense level was thirteen. Based on a Criminal History Category of I and an offense level of thirteen, Asher's sentencing range was twelve to eighteen months. The district court sentenced Asher to a term of imprisonment of twelve months and one day, to be followed by three years of supervised release. Asher filed a timely notice of appeal, and he now challenges his sentence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

## II.

Asher's sole contention on appeal is that the district court erred in determining the amount of loss to the Bank of Illinois for purposes of § 2F1.1(b)(1)(H) of the sentencing guidelines because the court failed to consider the bank's actual loss. Instead, the district court focused on the amount of overdrafts at the time Asher's check-kiting scheme was discovered—an amount which was $160,000. Asher argues that the amount of loss resulting from his check-kiting activities was $0 because he promptly repaid the $160,000 of overdrafts to the Bank of Illinois, and the bank suffered no actual loss. This appeal presents a question of law which we review *de novo*, since Asher is challenging the district court's interpretation of the meaning of "loss" for purposes of § 2F1.1(b)(1). *United States v. Mau*, 45 F.3d 212, 215 (7th Cir.1995); *United States v. Holiusa*, 13 F.3d 1043, 1045 (7th Cir.1994).

In a recent decision addressing the same issue that is currently before us, this court clearly held that for purposes of § 2F1.1(b)(1) the amount of loss resulting from a check-kiting scheme is determined at the time the scheme is discovered. *Mau*, 45 F.3d at 215–16. The defendant in *Mau* was the owner of a Chicago nightclub who kited checks among three separate bank accounts in order to deal with his business's cash flow problems. The check-kiting scheme continued for about seven months until it was discovered by Mount Greenwood Bank of Chicago. At the time of discovery, Mau's account at Cosmopolitan National Bank of Chicago was overdrawn by $69,862.86. In compliance with a demand from the victim bank, Mau signed a note for the amount of the overdraft and provided collateral to secure the note. At sentencing, the district court added five points to Mau's base offense level pursuant to § 2F1.1(b)(1)(F) because it determined that the check-kiting scheme resulted in a loss of more than $40,000 and less than $70,000. In affirming the district court, this court embraced the Fifth Circuit's rationale in *United States v. Frydenlund*, 990 F.2d 822 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 192, 126 L.Ed.2d 150 (1993) and —— U.S. ——, 114 S.Ct. 337, 126 L.Ed.2d 281 (1993), to reject Mau's argument that no loss enhancement should have been applied under § 2F1.1(b)(1) because (1) he did not intend to cause a loss and (2) his note, backed by collateral, left the bank with no loss. The *Mau* court stated: "The fact that a check kiter enters into a repayment scheme after the loss has been discovered does not change the fact of the loss; such fact merely indicates some acceptance of responsibility." *Id.* at 216.

We find that the *Mau* decision is controlling. Thus, while Asher's decision to repay the amount of loss that existed at the time the check-kiting scheme was discovered may indicate that he accepted responsibility for his fraudulent practices, it does not indicate that his fraudulent practices created no loss to the bank for purposes of § 2F1.1(b)(1). As the *Mau* court explained:

The Guidelines stipulate that in fraud cases, "[a]s in theft cases, loss is the value

of the money, property or services unlawfully taken...." U.S.S.G. § 2F1.1 application note 7. The time to determine that loss in a check-kiting scheme is the moment the loss is detected. *Accord, United States v. Shaffer,* 35 F.3d 110, 114 (3d Cir.1994) (adopting *Frydenlund* analysis and noting that "check kiting crimes, because of their particular nature, are crimes where the district court must calculate the victim's actual loss as it exists at the time the offense is detected....")

*Mau,* 45 F.3d at 216.

 Asher concedes that at the moment his check-kiting scheme was detected, his account at the Bank of Illinois was overdrawn by $160,000. In light of our holding in *Mau,* the district court did not err in adding seven points to Asher's base offense level pursuant to § 2F1.1(b)(1)(H), since the check-kiting scheme resulted in a loss of more than $120,000 but not more than $200,000. U.S.S.G. § 2F1.1(b)(1)(H). Asher's argument that there was no loss to the bank because he promptly repaid the full amount of his overdrafts does not carry the day. Asher was caught engaging in a fraudulent check-kiting scheme. The mere fortuity that he had the financial resources available to him to repay the victim bank in full after his check-kiting scheme was discovered does not negate the fact that he engaged in fraudulent conduct which resulted in the loss of $160,000. Moreover, the sentencing court properly took Asher's voluntary restitution into account by reducing his offense level two points for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a). In short, the rule is clear that for purposes of § 2F1.1(b)(1) of the sentencing guidelines, the amount of loss resulting from a check-kiting scheme is determined at the time the scheme is discovered.

### III.

For the reasons set forth above, we affirm the defendant's sentence.